# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Troy J. Green,**
**Defendant/Third-Party Plaintiff Below, Petitioner**

**FILED**

**January 24, 2014**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs)   No. 13-0243** (Berkeley County 01-C-399)

**Ford Motor Credit Company, Plaintiff Below;**
**Fast Action Recovery, Third-Party Defendant**
**Below, Respondents**

## MEMORANDUM DECISION

Petitioner Troy J. Green, appearing *pro se*, appeals the order of the Circuit Court of Berkeley County, entered February 5, 2013, that denied his motion to vacate a settlement approved by the court on August 1, 2005. Respondent Ford Motor Credit Company, by counsel Christopher A. Dawson, filed a response.[1]

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure and is appropriate for a memorandum decision rather than an opinion. For the reasons expressed below, the decision is reversed and this case is remanded with directions to hold a new hearing to determine whether petitioner moved to vacate the settlement within a reasonable time after his release from incarceration under Rule 60(b) of the West Virginia Rules of Civil Procedure.

On July 19, 2001, respondent sued petitioner for the amount still due under the parties' retail installment sales contract following respondent's sale of petitioner's repossessed vehicle. Petitioner filed an answer *pro se* and filed, through counsel Brian J. McAuliffe, an amended answer, a counterclaim, and a third-party complaint against Fast Action Recovery, the recovery company that repossessed his automobile.

Attorney McAuliffe negotiated a settlement offer where all claims would be dismissed and petitioner would receive $7,500. Petitioner rejected the settlement offer. Consequently, attorney McAuliffe moved to withdraw as petitioner's counsel. Attorney McAuliffe's motion was never acted upon by the circuit court.

At or about that time, petitioner was also sentenced to federal prison on charges unrelated to the instant case. As a result of petitioner's incarceration, the circuit court eventually appointed

---

[1] The other respondent, Fast Action Recovery, did not file a response.

1

Attorney Margaret Gordon as his guardian ad litem.[2] According to the Federal Bureau of Prisons ("BOP"), from March of 2003 to February of 2006, petitioner was housed at the low security facility at Federal Correctional Institution Allenwood in White Deer, Pennsylvania. On April 14, 2005, Attorney Gordon wrote petitioner and told him that respondent was still willing to settle the civil action if he would accept a payment of $1,000. Attorney Gordon further explained as follows:

> My job as your guardian *ad litem* is to say whether the offer is fair, and I think that it is under the facts of the case as I know them. If you feel differently, or if there is some other reason that you don't want to have this money, please write to me immediately and let me know your feelings. If I don't hear from you, my position will be to say that the offer is fair, but to make a technical objection for the record to the settlement. I think the Judge might settle it anyway, unless I have something from you.

Attorney Gordon mailed her letter to Troy Green, #04253-087, Low Security Correctional Institution Allenwood, P.O. Box 1000, White Deer, Pennsylvania, 17887, which was petitioner's correct address.[3]

A settlement hearing occurred on July 1, 2005. Attorney Gordon provided the circuit court with the following chronology of the settlement negotiations: (1) respondent first made its offer of $1,000 in September of 2003 and then re-extended the offer in April of 2004; (2) petitioner informed Attorney Gordon by phone message that "he didn't feel that he wanted to accept $1,000"; (3) Attorney Gordon wrote her April 14, 2005 letter that if petitioner did not want to settle the case for $1,000, he should reply immediately; and (4) petitioner did not reply to Attorney Gordon's April 14, 2005 letter. In addition, Attorney Gordon opined that based on her investigation of the facts, "I don't think [petitioner] would even get $1,000 if this actually went to trial" and that "I don't think he would get a lawyer to do the case for him[, which] is why I would recommend [the settlement] to the Court." Counsel for respondent told the circuit court the original settlement offer of $7,500 was based on a "misunderstanding of the facts" on the part of the attorney who initially handled the case for petitioner, but that petitioner desired to depose of the case for its "nuisance value of $1,000." Based on the representations of the attorneys, the circuit court approved the settlement.

Counsel for respondent prepared the order that approved the settlement and dismissed all claims including petitioner's third-party complaint. The order noted petitioner's objection to the settlement, but found that the settlement was in his best interests because, in the opinion of Attorney Gordon, petitioner would "not prevail in either his counter-claim or his proposed third party complaint." The order directed respondent to remit $1,000 to petitioner's guardian ad litem

---

[2] Attorney Gordon was the second lawyer appointed by the circuit court to serve as petitioner's guardian ad litem.

[3] The record contains several of Attorney Gordon's letters to petitioner.

to be held in trust in an interest-bearing account until he was released from incarceration. The circuit court entered the order approving settlement on August 1, 2005, but did not direct that a copy of the order be mailed to petitioner.

Attorney Gordon prepared a second order that authorized her to invest the $1,000 settlement proceeds in an interest-bearing account on petitioner's behalf. The investment order recited the pertinent facts as follows:

> [(1)] that [petitioner] had not been in touch with Mrs. Gordon in a meaningful way about his desires regarding settlement of this matter; [and (2)] that the Court had the right to order settlement of the case, upon Mrs. Gordon's representations that the proposed settlement was fair to [petitioner], even if he may object to the same.

The investment order further indicated that additional findings were set forth in the order approving settlement prepared by counsel for respondent. The investment order was entered on August 1, 2005, with a direction that a copy be mailed to petitioner at Low Security Correctional Institution Allenwood, P.O. Box 1000, White Deer, Pennsylvania, 17887.

Petitioner was released from federal prison on March 19, 2012. In May of 2012, petitioner told Attorney Gordon that he was unhappy with "the amount of the settlement." Consequently, on May 9, 2012, Attorney Gordon moved to (1) reopen the case; (2) withdraw as petitioner's guardian ad litem; and (3) to obtain direction as to how she was to pay out the settlement proceeds. On July 9, 2012, the circuit court held a hearing that was then adjourned because of a potential conflict of interest on the part of Judge Yoder. However, before the hearing's adjournment, petitioner stated on the record that "I didn't know in 2005 that they did a settlement" and that the settlement was a "surprise" to him.

Judge Yoder gave petitioner leave to file a motion for the judge's disqualification that petitioner subsequently filed on August 1, 2012. The motion was transmitted to the Chief Justice of this Court, who declined to disqualify Judge Yoder from presiding in the case.

The circuit court held a second hearing on Attorney Gordon's motions on September 10, 2012. Petitioner appeared in person and was once again represented by Attorney McAuliffe. Attorney McAuliffe stated that he would like to have the opportunity to brief the issue of whether petitioner was entitled to have the settlement vacated. The circuit court asked Attorney McAuliffe whether he could supply any case law that supported petitioner's position. Attorney McAuliffe answered, "I don't know if I can[.]" The circuit court indicated that it was almost certain that the court would rule against petitioner, but granted Attorney McAuliffe's request to brief the issue. The circuit court allowed Attorney Gordon to withdraw as petitioner's guardian ad litem and ordered that the settlement proceeds be paid to Attorney McAuliffe to hold for petitioner pending final disposition of the case.

On September 28, 2012, Attorney McAuliffe filed a motion to vacate the settlement on petitioner's behalf. The circuit court thereafter ordered respondent to respond to the motion.[4] Respondent filed a response opposing the motion to vacate on October 11, 2012. On February 5, 2013, the circuit court entered a brief two-page order that denied petitioner's motion to vacate the settlement. The circuit court noted that respondent had opposed the motion and that the court had been "sufficiently advised" of the pertinent issue between the parties. Petitioner now appeals pro se the circuit court's February 5, 2013 order.

We review a circuit court's denial of a motion to vacate a settlement for an abuse discretion. *See* Syl. 5, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974).[5] On appeal, both parties address whether petitioner moved to vacate the 2005 settlement within a reasonable time under Rule 60(b). Petitioner alleges that the last document he received regarding this case was a December 4, 2003, order that removed the case from the active docket because of his incarcerated status[6] and that once he was released from incarceration in 2012, he promptly communicated with his guardian ad litem. Respondent notes that Attorney McAuliffe, did not formally move to vacate the settlement on petitioner's behalf until September 28, 2012, an interval of over seven years from the date the settlement was approved. However, this Court determines that the issue of whether petitioner moved to vacate the settlement within a reasonable time is clouded by the fact that both the circuit court and all the attorneys, even Attorney McAuliffe, assumed that as long as petitioner's guardian ad litem found that the settlement was in his best interests, the court could approve it over petitioner's objection.

---

[4] Respondent states that it did not receive notice of either the July 9, 2012 hearing or the September 10, 2012 hearing.

[5] Neither petitioner's September 28, 2012 motion to vacate the settlement nor the circuit court's February 5, 2013 order addressed under which rule the motion was filed. However, this Court finds that respondent's suggestion that the motion should be considered under Rule 60(b) of the West Virginia Rules of Civil Procedure is correct. *See Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974) (motions to vacate a judgment are considered under Rule 60(b)).

[6] The record is equivocal as to whether petitioner is correct in his assertion that he received no document regarding this case after December of 2003. The record reflects that Attorney Gordon mailed her April 14, 2005 letter to the address she used to mail petitioner a copy of a December 8, 2003 order. The December 8, 2003 order is the same order petitioner states was the last document he received even though Attorney Gordon's letter was subsequently sent to the same address. In fact, Attorney Gordon used the same address for petitioner for every letter she wrote to him from 2003 through 2005, consistent with the information this Court received from the BOP that petitioner was housed at the low security facility at Allenwood from March of 2003 to February of 2006. It is possible that the copy of the December 4, 2003 order petitioner received was sent to him by the circuit clerk. But, even if that is so, Attorney Gordon used the same address for petitioner as had the circuit clerk. Therefore, if petitioner was able to receive a document from the circuit clerk at that address, there should not have been any reason for petitioner not to have received Attorney Gordon's letters to the same address.

4

This Court finds that such an assumption is legally unsupportable. First, an attorney-client relationship exists between an incarcerated person and a lawyer appointed to serve as the prisoner's guardian ad litem. *See State ex rel. Ash v. Swope*, __ W.Va. __, __ S.E.2d __, 2013 WL 5976106, Slip Op. at 7-8 (November 6, 2013). Second, while an attorney is often clothed with authority to settle a case on her client's behalf, that presumption can be overcome. *See Messer v. Huntington Anesthesia Grp., Inc.*, 222 W.Va. 410, 418-19, 664 S.E.2d 751, 759-60 (2008). The Court in *Messer* found that the attorney in that case had apparent authority to settle a case for his clients. However, in the case at bar, the record clearly reflects that petitioner's guardian ad litem had neither actual or apparent authority to settle. At the July 1, 2005 settlement hearing, Attorney Gordon told the circuit court that she wrote petitioner in April of 2005 because petitioner had informed her in a phone message that he did not want to settle the case for $1,000. Therefore, the last communication before the settlement that Attorney Gordon received from her client directed her not to settle the case.[7] Accordingly, this Court concludes that the circuit court's August 1, 2005, approval of the settlement was erroneous as a matter of law.

This Court now remands the case to the circuit court. The Court directs that a new hearing be held to determine whether petitioner moved to vacate the settlement within a reasonable time after his release from incarceration under Rule 60(b).

For the foregoing reasons, we reverse the circuit court's February 5, 2013 order and remand this case with directions.

Reversed and Remanded with Directions.

**ISSUED:**   January 24, 2014

**CONCURRED IN BY:**

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

[7] In his September 28, 2012 motion to vacate the settlement, petitioner disavowed making any suggestion of improper motive or conduct on part of Attorney Gordon; rather, petitioner based his motion on a denial of due process and "[a] lack of authority."